Michael V. **FRIERDICH** and Connie J. Frierdich, Petitioners–Appellants,

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.**

No. 89–3794.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 7, 1990.

Decided Feb. 12, 1991.

Michael V. Frierdich and Connie J. Frierdich, Columbia, Ill., pro se.

Arthur W. Morris, Frierdich, Lopinot & Morris, Columbia, Ill., for petitioners-appellants.

Peter K. Scott, I.R.S., Gary R. Allen, Jordan L. Glickstein, William S. Estabrook, Dept. of Justice, Tax Div., Appellate Section, and Charles S. Casazza, U.S. Tax Court, Washington, D.C., for respondent-appellee.

Before POSNER, MANION, and KANNE, Circuit Judges.

MANION, Circuit Judge.

Petitioner-appellant Michael V. Frierdich and his wife Connie ("Frierdich") petitioned the United States Tax Court for a redetermination of a federal income tax deficiency assessed against them by the Internal Revenue Service ("IRS"). The IRS claimed unpaid taxes on $100,000 that Frierdich should have included in his taxable gross income for the year 1980. Frierdich (an attorney) insists that the $100,000 in question was a loan from a client who had also hired him to handle the estate of her recently deceased husband. The IRS claimed that the $100,000 was actually an advance payment for legal services simply disguised as a loan in order to defer taxes.

The Tax Court, after a trial and reconsideration, held that Frierdich had not met his burden of proof in establishing that the arrangement between him and his client was a loan. Rather, it concluded that the transaction was an advancement of legal fees for services to be rendered in the future. For the following reasons, we do not find the Tax Court's holding to be clearly erroneous and affirm the Tax Court's decision.

I.

*A. Facts*

Frierdich has been an attorney living and practicing law in Columbia, Illinois since 1970. Sometime in his career Frierdich met George F. Reeves, Jr., an Illinois businessman. George was at first a client of Frierdich's, but beginning about 1973 or 1974 they also became partners in real estate transactions and business enterprises. George's wife Ruth was a principal in some of her husband's business ventures and dealings with Frierdich.

On August 1, 1979, when George died, Ruth was designated as his estate's executor. At the time of George's death, Ruth asked Frierdich to be her attorney and the attorney for the estate. Frierdich agreed.

On January 1, 1980, five months after George's death, Frierdich prepared and signed a document entitled "Promissory Note" in the face amount of $100,000. In apparent consideration for the note, Frierdich received the sum of $100,000 from Ruth. The note called for Frierdich to pay Ruth the principal sum of $100,000 together with interest at the rate of eight percent per year until paid. The document provid-

ed in part: "Said principal interest [sic] shall be due and payable at the time of payment of attorney's fees due [Frierdich] subject to closing of the estate of George S. Reeves, Jr." The note further stated: "In the event of default, the undersigned further authorizes Ruth S. Reeves to reduce from any amounts owed [Frierdich], as attorney for the executor and estate of George F. Reeves, Jr., amounts due here entered plus accrued interest." The note did not provide for any schedule or time frame for the repayment of the $100,000, nor did it specify a definite date whereby the estate must be closed and the loan paid.[1]

On November 6, 1986, the IRS issued a statutory notice of deficiency to Frierdich and his wife asserting that the $100,000 was really an advance of estate attorney fees that was not reported on Frierdich's 1980 income tax return. Frierdich and his wife petitioned the Tax Court to review the asserted deficiencies.

## B. Tax Court Decision

The Tax Court considered certain objective factors to determine the taxpayer's intent and whether a *bona fide* loan occurred. The factors derived from case law and applied by the Tax Court included: (1) the existence or non-existence of a debt instrument; (2) provisions for security, interest payments, and a fixed payment date; (3) whether or not repayments of the loan were made; (4) the taxpayer's ability to repay the loan; (5) the borrower's receipt of compensation; and (6) the testimony of the taxpayer. See *Matter of Uneco, Inc.*, 532 F.2d 1204, 1208 (8th Cir.1976); *In the Matter of Indian Lake Estates, Inc.*, 448 F.2d 574, 578–79 (5th Cir.1971); *Haber v. Commissioner*, 52 T.C. 255 (1969), *aff'd* 422 F.2d 198 (5th Cir.1970).

The Tax Court, in holding for the IRS, found that the transaction between Frierdich and Ruth Reeves was not a loan, but instead amounted to an impermissible sheltering of part of the legal fees owed by the estate. The holding was partly based upon the "Promissory Note's" terms which

linked repayment with the closing of George Reeves' estate. The Tax Court also noted a lack of arm's-length bargaining between Frierdich and Mrs. Reeves, further diminishing the likelihood that it was a true loan. Holding that the $100,000 should have been reported on Frierdich's 1980 taxable gross income, the Tax Court ordered due the tax deficiencies assessed by the IRS. Frierdich appeals.

## II.

### A. Standard of Review

■ The question on appeal is whether the $100,000 Reeves transferred to Frierdich was intended as a loan or as a prepayment for legal services. The Tax Court found Frierdich had no intent to repay the "loan." Since the determination of a taxpayer's intent is a question of fact, *Commissioner v. Duberstein*, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960), and *Comdisco, Inc. v. United States*, 756 F.2d 569, 575 (7th Cir.1985), we confine our review to the clearly erroneous standard of Rule 52(a). Thus we will reverse only if, on the basis of all the evidence, we are convinced that a mistake has been made. See *United States v. LaSalle National Bank*, 437 U.S. 298, 305, 98 S.Ct. 2357, 2361, 57 L.Ed.2d 221 (1978). Since much of the evidence consisted of Frierdich's own testimony, the Tax Court had to determine his credibility. The "clearly erroneous" standard is particularly appropriate where the Tax Court must make determinations as to the credibility of witnesses. *Busch v. Commissioner*, 728 F.2d 945, 950 (7th Cir.1984).

### B. Discussion

■ Frierdich had the burden of proving to the Tax Court that the $100,000 he received was non-taxable proceeds of a *bona fide* loan and not an advance payment for legal services to be rendered in the future. *Welch v. Helvering*, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212 (1933); *Lerch v. Commissioner*, 877 F.2d 624, 631 (7th Cir.1989). Frierdich's explanation concerning the intention and operation of the "Promissory

---

1. At oral argument we learned that the estate was finally closed in mid–1990.

Note" is not implausible. If Frierdich had satisfied his burden of proof, the proceeds of the loan would not constitute taxable income to him. The Tax Court, however, determined that the transaction did not result from arm's-length bargaining and that the "Promissory Note" did not contain typical loan formalities which would indicate that Frierdich intended to repay the money. Our review of the case is not one which attempts to determine the greater probability of competing theories explaining certain factual events. We are instead charged with determining whether the Tax Court's decision is one which leaves us "with the definite and firm conviction that a mistake has been made." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). Based upon the authority cited by the Tax Court as applied to the facts of this case, we cannot say that the Tax Court's legal conclusion was "clearly erroneous."

### 1. Arm's-length bargaining.

For Frierdich to enjoy the $100,000 transfer as a loan he must clearly demonstrate some intent to repay. Such intent is demonstrated by the objective facts of each case from which the court has to determine Frierdich's actual intent or motive. *Busch v. Commissioner, supra; Haag v. Commissioner*, 88 T.C. 604, 615–16 (1987). The Tax Court, in rejecting Frierdich's claim, referred to many factual circumstances surrounding the $100,000 transfer which are uncharacteristic of a *bona fide* loan. The Court noted that the transfer of the money (which was incidentally used for a legitimate business purpose) was not a transaction bargained for at arm's length between the parties. To support this point, the Tax Court noted that the interest rate on the "loan" provided for in the "Promissory Note" was set at a constant 8% per annum. This rate, in comparison to the prevailing market interest rates in the early 1980's, was peculiarly low. For example, the prime rate of interest (the rate charged by commercial banks to their best customers) for each of the first five years of the loan period was 15.27, 18.87, 14.86, 10.71, 12.04, and 9.93. Obviously, this transaction viewed strictly from the relatively low rate of return was a loser for the "lender" Ruth Reeves. The Tax Court recognized that an informed and capable party when considering only the interest rate would have no incentive to participate in this transaction. But a loan providing for a below-market interest rate does not, by itself, suggest a diminished intent to repay. Frierdich in his brief and at oral argument explained that the 8% rate was set to approximate the parties' impression of what an average market rate of interest would be over the anticipated life of the loan. Indeed, we see that in later years there was a pronounced reduction in the prevailing market rates (approaching the rate stipulated in the loan document). Although Frierdich's prediction for interest rates was not precise, to say the least, few others predicted the upsurge of rates in 1980 and 1981. Thus Frierdich's interest rate provision has arguable business validity.

Additionally, the Tax Court disapproved of the parties' tying the due date on the loan to the estate's closing. Typically, a loan is due and payable at a date agreeable to all parties to the loan and specified in advance of the loan's origination. Here the "Promissory Note" provided no fixed deadline for the closing of the estate or repayment of the loan. The closing of George's estate, although subject to state law restrictions, was essentially in Frierdich's control. The Tax Court felt that the open-ended nature of the loan was yet another indication that there was no arm's length bargaining in the loan's construction. This fact, along with other circumstances, encouraged the Tax Court to conclude that the loan was a ruse and that the parties did not intend repayment but instead simply contemplated an offset sometime in the future. There being no intent to repay, the court reasoned that the $100,000 transfer was therefore an advance payment of the estate fee. See *Roth Steel Tube Co. v. Commissioner*, 800 F.2d 625, 630 (6th Cir. 1986).

The failure of the "Promissory Note" to reflect any arm's-length bargaining diminishes it as evidence of Frierdich's intent to

repay the loan. Frierdich admits that the "Promissory Note" does not provide Ruth any security in his personal assets or establish any fixed payment date independent of Frierdich's control. Furthermore, the "Promissory Note" does not prescribe a payment schedule or an amortization schedule, reflecting a method (and hence intent) of repayment. In fact, Frierdich had made no payments to Ruth on the "loan" at the time the IRS sent Frierdich the notice of deficiency, six years after the transfer of money. For these reasons, the Tax Court found Frierdich had no intent to repay and that the parties anticipated having the amount due under the loan offset by estate legal fees, permitting Frierdich the tax-free use of $100,000 until the estate's closing.

Frierdich argues, nevertheless, that linking the loan payment to the estate's closing offers mutual security for payment and receipt. Frierdich's law firm would receive a fee from the estate, much of which would presumably be paid to Frierdich, giving him the money necessary to pay his loan obligation. Theoretically, Ruth would have at least an indirect assurance that her loan would be secure because in her separate role as executrix of the estate, she would have some control over payment of fees. While this argument presents some logic to the unusual wording in the note, it does not overcome the Tax Court's plausible conclusion that the linkage simply indicated an advance payment on the attorney fees. This conclusion is not clearly erroneous.

### 2. Loan irregularities.

Frierdich claims that Ruth Reeves fully understood his ability to repay the loan. The Tax Court, however, concluded that Frierdich failed to document this claim. Frierdich did not submit to the Court a balance sheet of his personal finances (his submitted tax forms for 1979 and 1980 were properly deemed insufficient to prove his ability to repay) nor any evidence that Ruth Reeves received a copy of such a balance sheet. In fact, he offered no evidence that he had familiarized Ruth Reeves with his financial situation in general. Without any such proof, the Tax Court

refused to accept the assertion that Ruth was properly informed.

Frierdich further insists that since the attorney's fees would be owed to the law firm and not to him personally, the $100,000 should not have been characterized as a prepayment to him. Ruth's payment, Frierdich claims, was a personal loan to him for his own investment purposes. The estate, not Ruth, owed the legal fees. Why, he asks, would Ruth prepay the estate's attorney fees with her own funds (an interesting yet unresolved point since Ruth did not testify)?

Ruth certainly had no apparent benefit in prepaying estate fees. Presumably she had already paid tax on the $100,000 "loan" amount for which she would receive only an 8% return at a time when other sources paid much more. Because of major (unforeseeable) changes in the tax law, Ruth's anticipated tax advantage in prepaying was difficult to predict at the "loan's" origination. Ultimately the interest on the loan would be taxed fully at some rate when paid. The tax advantage in characterizing payments pursuant to the "Promissory Note" as interest rather than estate income (received because of the offset) was not clear or predictable at the loan's outset. Other factors, such as Frierdich's eventual taxes on the fees and his deductions for interest on the "Promissory Note" could impact the nature of the transactions. What seems clear, however, is that the "Promissory Note" (because of the offset feature) is sufficiently flexible to permit the parties to take optimal advantage of the tax law. When the estate finally closed, Ruth could characterize payments under the "Promissory Note" as either interest on the loan or income from the estate depending on which received preferable tax treatment.

But hindsight analysis is not the way to resolve this case. In trying to predict the parties' intent to have the loan repaid, the Tax Court considered the "Promissory Note" and its surrounding circumstances when the document was signed. The Tax Court reasonably concluded that proper intent was lacking and that the "Promissory

Note" was a disguise for a tax-deferred prepayment of anticipated attorney's fees.

Many of these issues could have been cleared up through the testimony of Ruth Reeves—which was significant by its absence. The Tax Court was justifiably dubious of Frierdich's decision not to call her to offer deposition testimony relating to these proceedings. He claims he thought the government would bring her in to testify, although his letter to her a few days before the scheduled trial indicated only that she may hear from the IRS to verify some information. After the IRS had made repeated efforts to contact and subpoena Ruth Reeves, Frierdich notified the IRS, in a letter dated February 24, 1988, that they could contact Ruth Reeves "through me" with "no difficulty." The record contains correspondence between Ruth Reeves and Frierdich notifying her about the tax dispute and that a trial was imminent. However, by the trial date, Frierdich apparently made no effort to take Ruth Reeves' deposition and gain exculpatory evidence. Given the importance of Ruth Reeves in substantiating Frierdich's case, the Tax Court was fully justified in assuming that her testimony would not corroborate Frierdich's various contentions. See *Wichita Terminal Elevator Co. v. Commissioner*, 6 T.C. 1158, 1165 (1946), *aff'd* 162 F.2d 513 (10th Cir.1947), holding that if a party having the burden of proof fails to call a witness who is available to testify, and that witness could corroborate the taxpayer's testimony, the taxpayer's failure to do so creates a presumption that the witness' testimony would be unfavorable. See also *Simon v. Commissioner*, 830 F.2d 499, 506 (3d Cir.1987); *Glimco v. Commissioner*, 397 F.2d 537, 541 (7th Cir.1968). What may have been a plausible explanation for the unusual structure of the transaction falls flat without the substantiating testimony of Ruth Reeves.

As the Tax Court correctly points out, the repayment of a loan must be unconditional and not contingent upon some future event. *United States v. Henderson*, 375 F.2d 36, 39 (5th Cir.1967). However, in this case the repayment of the loan is expressly conditioned on the closing of George Reeves' estate, and the balance of the estate's debt to Frierdich is contingent upon the amount due to Ruth on the "Promissory Note." The Tax Court had difficulty understanding why the repayment under the loan should affect the amount of attorney fees owed by the estate if the loan was indeed an independent transaction. Frierdich argues that it was constructed to give the parties maximum security and assurance. He asserts that there is no direct connection since the estate would owe fees to the law firm, not him. And while Ruth is the executrix of the estate and sole beneficiary, she does not personally owe the fees and thus they cannot be an "offset" for money personally owed to her. Nevertheless, the Tax Court concluded that this purposeful linkage between the estate fee, the loan, and its stated right to setoff, made the $100,000 "loan" an advance payment by the estate for legal services, permitting Frierdich to have tax-free use of $100,000 for what turned out to be many years. Based on the facts before us, we cannot say that the Tax Court's conclusion was without foundation in fact or law. Frierdich has failed to conclusively demonstrate that his intent was to repay the loan.

Frierdich insists that since the IRS cannot disprove any of his claims, his testimony relating to the Promissory Note and his intent to repay must be accepted as true by the Tax Court. We disagree. Frierdich, as a party to a lawsuit, cannot expect the Tax Court to accept his personal testimony as the absolute fact. The statements of an interested party as to his own intentions are not necessarily conclusive, even when they are uncontradicted. *Lerch v. Commissioner, supra* at 631. See also *Snyder v. Commissioner*, 34 T.C. 400, 405–06 (1960), *aff'd*, 288 F.2d 36 (7th Cir.1961); and *Busch v. Commissioner, supra*, 728 F.2d at 948. His own explanation of why the loan document is the way it is and why therefore a *bona fide* loan exists is plausible, but it is not enough. In an effort to detect those persons who attempt to evade taxes, we have objective standards which distinguish the true loan and the false one. See *Busch v. Commissioner, supra*, and

*Spheeris v. Commissioner*, 284 F.2d 928, 931 (7th Cir.1960). Given those standards, the Tax Court's conclusion that the transaction was a prepayment and not a *bona fide* loan is not clearly erroneous.

### III.

For the foregoing reasons, the decision of the Tax Court is

AFFIRMED.