T.C. Memo. 1996-554


UNITED STATES TAX COURT


BARRY H. AND MARILYN S. SCHEINER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 18570-94.                    Filed December 23, 1996.


<u>Herman B. Rosenthal</u>, for petitioners.

<u>Donna M. Young</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


PANUTHOS, <u>Chief Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7443A(b)(3) and Rules 180, 181, and 182.[1]  Respondent determined deficiencies in

_____

[1]  Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the tax years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

petitioners' Federal income taxes in the amounts of $4,661 and $3,299 for the taxable years 1991 and 1992, respectively. The issue remaining for decision is whether the losses petitioners claimed are passive activity losses within the meaning of section 469. More specifically, we must decide whether petitioners materially participated in the rental activity at Wisp condominium hotel.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. At the time of filing the petition herein petitioners resided at Rockville, Maryland.

During the years at issue petitioner Barry H. Scheiner worked as a physicist for the U.S. Department of the Army in Adelphi, Maryland. Petitioner Marilyn S. Scheiner (hereinafter sometimes referred to as petitioner) worked as a college professor at Montgomery College teaching accounting and business subjects. Petitioner was also a partner in the accounting partnership of Scheiner & Halpern. The partnership consisted of two partners, both of whom maintained offices in their respective homes. While the amount of time spent by petitioner and her partner on partnership activities is not clear,[2] the services were performed primarily during the tax return preparation season--January through mid-April.

---

[2] Petitioner reported nonpassive income attributable to Scheiner & Halpern on Schedules K-1 in the amounts of $11,636 in 1991, and $11,788 in 1992.

On September 8, 1987, petitioners entered into a contract to purchase a condominium unit (unit No. 390) in the Wisp resort located in Garrett County, McHenry, Maryland.  The purchase price was $88,900.  The purchase and sale of the condominium unit took place in February 1988.

The Wisp condominium hotel consisted of two buildings with a total of 168 units.[3]  The larger building contained 100 units, and the smaller building contained 68 units.  Each owner of a condominium unit at Wisp is a member of the council of unit owners.  The council of unit owners elects a board of directors.

Each unit owner could elect to dedicate his or her unit to a hotel rental program.   Under the hotel rental program, rental receipts for all units in the program, less management expenses, are divided proportionally on a monthly basis among the participating units.  Thus, a unit owner participating in the program would not necessarily be concerned about rental of a particular unit since the income and expenses were pooled.  The units were rented on a rotational basis to equalize wear and tear.  A unit owner could use his or her own unit when it was not rented.

By agreement dated February 5, 1988, petitioners elected to participate in the hotel rental program.  During the years in issue, all unit owners participated in the hotel rental program.

---

[3]  One of the units was used as a beauty parlor.

The average rental period of a unit during the years in issue was 3 to 4 days.

On December 30, 1987, the council of unit owners entered into a contract with MHM, Inc., a professional hotel management corporation.  MHM, Inc., was the manager of the hotel rental program through 1991.  During 1992, Richfield Hotel Management, Inc. (Richfield), continued the management and marketing of units in the hotel rental program.

Petitioner became a member of the board of directors in November 1990 and was elected vice president of the board in 1991.  During the years in issue, the board of directors was required to deal with a number of serious issues with respect to the condominium hotel complex.  While the board was required to consider issues and establish policies, it was generally the management company that put the policies into effect.  Under the management contract, the council appointed MHM, Inc., as the "general operating manager" of the condominium hotel.  Thus, the management company hired staff who operated the hotel, conducted marketing and sales activities, handled payroll and accounting services, and ensured that maintenance and repairs were completed.

Board meetings were held monthly at Wisp, generally starting at 11:30 a.m. and ending about 4 p.m.  Each month, a lengthy package of written material (approximately 50 pages) was sent to each board member for review.  Because of petitioner's background in business and accounting matters, she was asked to review the

records of the condominium association to be certain that accounting principles were properly applied.

Petitioner attended eight board of directors meetings in 1991 and six in 1992.[4] Petitioner also attended the 1991 and 1992 annual meetings of the council of unit owners in her capacity as a board member. Because petitioner was the only board member who resided in Montgomery County, Maryland, unit owners living nearby often contacted petitioner in regard to various matters concerning Wisp. In 1991, petitioner spent at least 100 hours, but not more than 148 hours, on board-related matters. In 1992, petitioner spent at least 90 hours, but not more than 123 hours, on board-related matters.

On Schedules C of their 1991 and 1992 Federal income tax returns, petitioners claimed net losses in the amounts of $12,723 and $9,765, respectively, from the condominium hotel activity.[5] In her notice of deficiency, respondent determined that the losses were passive activity losses within the meaning of section 469. Therefore, the losses were allowed only to the extent of passive income.

---

[4] In his capacity as a unit owner, petitioner Barry H. Scheiner attended three such meetings in 1991 and two in 1992.

[5] On the 1992 return, separate Schedules C were filed by each petitioner reporting one-half the total loss.

OPINION

Petitioners bear the burden of proving that respondent's determination is erroneous.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

Section 162 permits deductions for all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business.  Section 212 permits deductions for all the ordinary and necessary expenses paid or incurred during the taxable year for the production of income.  Section 469, however, limits the deductions for losses from a "passive activity".  Chapin v. Commissioner, T.C. Memo. 1996-56.  In Mordkin v. Commissioner, T.C. Memo. 1996-187 (a case involving an owner of a condominium at Snowmass Village, Colorado), we described the operation of section 469 as follows:

> the passive activity loss for the taxable year is generally the amount, if any, by which the passive activity deductions for the taxable year exceed the passive activity gross income for such year.  Sec. 469(d)(1); sec. 1.469-2T(b)(1), Temporary Income Tax Regs., 53 Fed. Reg. 5711 (Feb. 25, 1988).

> As pertinent here, section 469(c) defines the term "passive activity" to include:  (1) Any activity which involves the conduct of any trade or business and in which the taxpayer does not materially participate, sec. 469(c)(1), and (2) any rental activity without regard to whether or not the taxpayer materially participates in the activity, sec. 469(c)(2), (4).

> For purposes of section 469(c)(1), the term "trade or business" is defined in section 469(c)(6) to include any activity in connection with a trade or business or any activity with respect to which expenses are allowable as a deduction under section 212.

> For purposes of section 469(c)(2), the term "rental activity" is defined in section 469(j)(8) as

any activity where payments are principally for the use of tangible property.  See also sec. 1.469-1T(e)(3)(i), Temporary Income Tax Regs., 53 Fed. Reg. 5702 (Feb. 25, 1988).  However, an activity involving the use of tangible property is not a rental activity for a taxable year, inter alia, if for such taxable year the average period of customer use for such property is seven days or less.  Sec. 1.469-1T(e)(3)(i) and (ii)(A), Temporary Income Tax Regs., supra.

In this case, the parties agree that the average period of customer use of petitioners' condominium unit at Wisp was less than 7 days during each of the years at issue.  The parties thus agree that petitioners' condominium hotel activity is not a rental activity as defined in section 469(j)(8) and the regulations thereunder and, thus, is not considered a passive activity under section 469(c)(2).  Nevertheless, petitioners' activity at Wisp will constitute a passive activity under section 469(c)(1) unless they establish that they materially participated in the activity during the taxable years in issue.  In Mordkin v. Commissioner, supra, we discussed the Code and regulations relating to material participation as follows:

Section 469(h)(1) provides that generally an individual shall be treated as materially participating in an activity only if he or she is involved in the operations of the activity on a basis that is regular, continuous, and substantial.  Congress expressly authorized the Secretary of the Treasury (Secretary) to prescribe such regulations as may be necessary or appropriate to carry out the provisions of section 469, including regulations that specify what constitutes material participation.  Sec. 469(1)(i).

Both temporary and final regulations relating to the meaning of the terms "participation" and "material participation" have been promulgated under section 469. With respect to the term "participation", final regulations issued under section 469 provide that generally "any work done by an individual (without

regard to the capacity in which the individual does the work) in connection with an activity in which the individual owns an interest at the time the work is done shall be treated for purposes of this section as participation of the individual in the activity." Sec. 1.469-5(f)(1), Income Tax Regs. Temporary regulations issued under section 469 provide certain exceptions to that definition of participation. As pertinent here, section 1.469-5T(f)(2)(ii)(A), Temporary Income Tax Regs., 53 Fed. Reg. 5727 (Feb. 25, 1988), provides that work done by an individual in such individual's capacity as an investor in an activity shall not be treated as participation by the individual in the activity unless the individual is involved in the day-to-day management or operations of the activity. For this purpose, work done by an individual in such individual's capacity as an investor in an activity includes:

> (1) Studying and reviewing financial statements or reports on operations of the activity;
>
> (2) Preparing or compiling summaries or analyses of the finances or operations of the activity for the individual's own use; and
>
> (3) Monitoring the finances or operations of the activity in a non-managerial capacity. [Sec. 1.469-5T(f)(2)(ii)(B), Temporary Income Tax Regs., _supra_.]

Temporary regulations relating to the meaning of the term "material participation" in section 469(h)(1) provide that, in general,

> an individual shall be treated, for purposes of section 469 and the regulations thereunder, as materially participating in an activity for the taxable year if and only if--
>
> (1) The individual participates in the activity for more than 500 hours during such year;
>
> (2) The individual's participation in the activity for the taxable year constitutes substantially all of the participation in such activity of all individuals (including

individuals who are not owners of interests in the activity) for such year;

(3) The individual participates in the activity for more than 100 hours during the taxable year, and such individual's participation in the activity for the taxable year is not less than the participation in the activity of any other individual (including individuals who are not owners of interests in the activity) for such year;

(4) The activity is a significant participation activity (within the meaning of paragraph (c) of this section) for the taxable year, and the individual's aggregate participation in all significant participation activities during such year exceeds 500 hours;

(5) The individual materially participated in the activity (determined without regard to this paragraph (a)(5)) for any five taxable years (whether or not consecutive) during the ten taxable years that immediately precede the taxable year;

(6) The activity is a personal service activity (within the meaning of paragraph (d) of this section), and the individual materially participated in the activity for any three taxable years (whether or not consecutive) preceding the taxable year; or

(7) Based on all of the facts and circumstances (taking into account the rules in paragraph (b) of this section), the individual participates in the activity on a regular, continuous, and substantial basis during such year. [Sec. 1.469-5T(a), Temporary Income Tax Regs., 53 Fed. Reg. 5725-5726 (Feb. 25, 1988).]

Petitioner argues that she materially participated in the Wisp condominium hotel alternatively under the provisions of section 1.469-5T(a)(3), (4) or (7), Temporary Income Tax Regs.,

53 Fed. Reg. 5725-5726 (Feb. 25, 1988).[6]  We will discuss each of petitioner's arguments separately.

Section 1.469-5T(a)(3), Temporary Income Tax Regs.

With respect to section 1.469-5T(a)(3), Temporary Income Tax Regs., supra, petitioner argues that during each of the years in issue, she participated in the condominium hotel activity for more than 100 hours, and that no single individual devoted more time to petitioners' unit than petitioner.  Respondent contends that petitioner does not meet the test of section 1.469-5T(a)(3), Temporary Income Tax Regs., supra, since petitioner has not established the hours spent in the activity.  Respondent further argues that, even if petitioner did establish that she spent more than 100 hours in the activity, the time spent was in the capacity of an investor and not in the day-to-day operation of the activity.  See sec. 1.469-5T(f)(2)(ii)(B), Temporary Income Tax Regs., 53 Fed. Reg. 5727 (Feb. 25, 1988).  In addition, respondent argues that other individuals (the paid hotel management staff) spent more time in the activity than petitioner.

---

[6]  Although sec. 1.469-5T(f)(3), Temporary Income Tax Regs., 53 Fed. Reg. 5727 (Feb. 25, 1988), provides that the participation of spouses may be combined for the purposes of determining material participation, petitioners do not argue that petitioner Barry Scheiner's attendance at board meetings in the capacity as a unit owner should be considered for the purposes of determining whether petitioners materially participated in the condominium hotel activity.  See supra note 4.  We make no findings in this regard and limit our discussion to petitioner Marilyn Scheiner's activities.  See sec. 469(c)(1).

A preliminary question we must decide is whether the work done by petitioner in her capacity as a board member and officer constitutes participation in the Wisp condominium hotel activity or, alternatively, constitutes investor participation within the meaning of section 1.469-5T(f)(2)(ii)(B), Temporary Income Tax Regs., supra. In Mordkin v. Commissioner, T.C. Memo. 1996-187, we held that the work done by a taxpayer on the board of directors dealing with a wide range of issues relating to the operation of a condominium hotel was not investor participation within the meaning of section 1.469-5T(f)(2)(ii)(B), Temporary Income Tax Regs., supra. Petitioner's activities as an officer and member of the board of directors are similar to the activities performed by the taxpayer in Mordkin. We similarly conclude that petitioner's activities as a board member of Wisp do not constitute investor participation.

We have found that petitioner spent at least 100 hours, but not more than 148 hours, on board activities in 1991, and at least 90 hours, but not more than 123 hours, in 1992. Even if petitioner has exceeded the 100-hour threshold, petitioner's activities will not constitute material participation under section 1.469-5T(a)(3), Temporary Income Tax Regs., supra, unless she establishes that no other individual spent more time in connection with the condominium rental activity. In this regard, in measuring the time spent by any particular employee at Wisp, petitioner argues that such an employee's time would need to be divided by 167 (the number of units participating in the rental

program).  Thus, according to petitioner, no one full-time employee at Wisp could have participated more than petitioner. To this effect, petitioner allocates all of her time spent on board matters solely to her condominium.  In contrast, petitioner ratably allocates the time spent by employees running the day-to-day operations of Wisp to all 167 units participating in the rental program.

Petitioner suggests, and we accept, that all of her time spent on board matters constitutes "participation" in the condominium rental activity, without regard to any specific connection of the board activities to petitioner's particular unit.  Petitioner also argues that the activities of Wisp employees constitute "participation" for the purposes of section 1.469-5T(a)(3), Temporary Income Tax Regs., supra, only to the extent that their services are directed towards petitioner's specific unit.  In this regard, there is nothing in the record from which to calculate the precise amount of time spent by employees in performing day-to-day services related solely to the rental of petitioner's condominium.  Likewise, there is no evidence regarding the extent to which petitioner's activities as a board member are specifically related to her unit.  Given that both petitioner and full-time staff, in their respective capacities, served all Wisp units, we believe it reasonable to assume that the portion of petitioner's board activities related to the rental of her unit is commensurate with the portion of the staff's activities related to the rental of petitioner's unit.

Cf. Mordkin v. Commissioner, supra. Consequently, we assume that all work done by full-time staff constitutes "participation" in connection with the rental of petitioner's unit. Id. Because the participation of full-time staff exceeded petitioner's participation during the years in issue, petitioner's activities do not constitute material participation under section 1.469-5T(a)(3), Temporary Income Tax Regs., supra.[7]

Section 1.469-5T(a)(7), Temporary Income Tax Regs.

Petitioner argues that based on all the facts and circumstances, she should be deemed to have materially participated in the condominium hotel activity. Sec. 1.469-5T(a)(7), Temporary Income Tax Regs., supra. The facts and circumstances test provided in section 1.469-5T(a)(7), Temporary Income Tax Regs., supra, is subject to certain limitations. A taxpayer must participate in the activity for more than 100 hours. Sec. 1.469-5T(b)(2)(iii), Temporary Income Tax Regs., 53 Fed. Reg. 5726 (Feb. 25, 1988). Additionally, a taxpayer's services performed in the management of an activity cannot be considered for the purposes of establishing material participation under section 1.469-5T(a)(7), Temporary Income Tax Regs., supra, if other individuals performing management services in connection with the activity were compensated for such services. Sec. 1.469-5T(b)(2)(ii)(A), Temporary Income Tax Regs., 53 Fed. Reg. 5726 (Feb. 25, 1988). Therefore,

---

[7] See also Serenbetz v. Commissioner, T.C. Memo. 1996-510.

petitioner's activities as a board member cannot be considered for the purposes of this test if other individuals providing management services are compensated.  Mordkin v. Commissioner, supra.

The record indicates that both MHM, Inc., and Richfield employed individuals to manage the day-to-day operation of Wisp. Consequently, respondent argues that section 1.469-5T(b)(2)(ii)(A), Temporary Income Tax Regs., supra, precludes petitioner's board activities from being considered participation under section 1.469-5T(a)(7), Temporary Income Tax Regs., supra. Were we to accept respondent's position, petitioner's activities would not be considered material participation under section 1.469-5T(a)(7), Temporary Income Tax Regs., supra.

Petitioner argues that the activities of onsite management should not be considered "management services" for the purposes of section 1.469-5T(a)(7) and (b)(2)(ii)(A), Temporary Income Tax Regs., supra.  To support this position, petitioner cites Staff of Joint Comm. on Taxation, General Explanation of the Tax Reform Act of 1986, at 241 (J. Comm. Print 1987) (hereinafter the General Explanation), which states:

> The application of the material participation standard to a condominium hotel that is not a rental activity for purposes of the passive loss rules may be illustrated as follows.  Assume that an individual who is an investor in the hotel does not live nearby, has a principal business that is unrelated to operating the hotel, is inexperienced in the hotel business, and employs agents to perform various essential hotel functions.  However, such individual's participation in the hotel business involves making frequent visits to the hotel in order to conduct onsite inspections, meet

with onsite management, and otherwise participate in integral functions of the business. In addition, the individual on a regular basis uses his independent discretion to make business decisions such as the following: (1) regularly establishing room rental rates, (2) establishing and reviewing hiring and other personnel policies, including review of management personnel, (3) reviewing and approving periodic and annually audited financial reports, (4) participating in budget operating costs and establishing capital expenditures, (5) establishing the need for and level of financial reserves, (6) selecting the banking depository for rental proceeds and reserve funds, (7) participating in frequent meetings at the hotel to review operations and the business plan, and (8) assisting in offsite business promotion activities. * * *

Under these circumstances, if the standard requiring regular, continuous, and substantial involvement is satisfied, then the taxpayer is treated as materially participating in the hotel activity. He is not so treated, however, in the absence of sufficient involvement. No safe harbor should be inferred from the preceding paragraph. * * * [Emphasis added.]

The above-quoted language summarizes colloquies between Senators Packwood and Hatfield on the floor of the U.S. Senate. See 132 Cong. Rec. 15032, 26685-26686 (1986) (colloquies between Senators Packwood and Hatfield). According to petitioner, the passage indicates Congress' intent to provide owners of condominium hotel units with the opportunity to hire onsite management without triggering the application of passive loss restrictions. Petitioner thus argues that respondent's interpretation of the management-related limitations of section 1.469-5T(a)(7), Temporary Income Tax Regs., supra, would preclude the hiring of any onsite management, thereby ignoring congressional intent. Petitioner contends that the only "management services" to be

considered for the purposes of section 1.469-5T(a)(7) and
(b)(2)(ii)(A), Temporary Income Tax Regs., <u>supra</u>, are those
within the prerogative of the owners; i.e., board activities.  As
no members of the Wisp board were compensated, petitioner argues
that her activities constitute material participation under
section 1.469-5T(a)(7), Temporary Income Tax Regs., <u>supra</u>.

We do not agree with petitioner's position.  The General
Explanation passage cited by petitioner was not meant to be
construed as a safe harbor.  Rather, the language cited by
petitioner indicates that taxpayers may hire onsite management
while engaging in activities sufficient to constitute material
participation, but only "if the standard requiring regular,
continuous, and substantial involvement" is otherwise satisfied.[8]

---

[8] Similarly, in <u>Mordkin v. Commissioner</u>, T.C. Memo. 1996-187, the taxpayer cited the colloquy between Senators Packwood and Hatfield in arguing that sec. 1.469-5T(a)(1), Temporary Income Tax Regs., 53 Fed. Reg. 5725 (Feb. 25, 1988), was invalid because it "required" an individual to participate in an activity for greater than 500 hours before being treated as having materially participated in that activity.  Specifically, the taxpayer relied upon the colloquy to argue that the determination of whether an individual materially participates in an activity should be based solely upon the integral nature of the work performed by the taxpayer, and not upon the quantity of work.  We rejected the taxpayer's argument, stating:

> The foregoing colloquy between Senator Hatfield and
> Senator Packwood makes it clear that services performed
> by a taxpayer that are deemed integral to the
> operations of a condominium hotel will constitute
> material participation by the taxpayer in those
> operations only if the taxpayer performs those services
> in such a way and "to such an extent" that it shows
> that the taxpayer's involvement in those operations is
> regular, continuous, and substantial.  Contrary to [the
> taxpayer's] contention, that colloquy does not in any

(continued...)

In this regard, we note that respondent's interpretation of section 1.469-5T(b)(2)(ii)(A), Temporary Income Tax Regs., supra, does not preclude petitioner from establishing material participation under any or all of six other tests. Mordkin v. Commissioner, T.C. Memo. 1996-187. For example, an individual may be treated as having materially participated in a condominium rental activity by participating for more than 500 hours, regardless of whether full-time onsite management was employed. Sec. 1.469-5T(a)(1), Temporary Income Tax Regs., supra.

With respect to management participation, the legislative history of section 469 also notes:

> Participation in management cannot be relied upon unduly both because its genuineness and substantiality are difficult to verify, and because a general management role, absent more, may fall short of the level of involvement that the material participation standard is meant to require. [S. Rept. 99-313 at 713, 734-735, 1986-3 C.B. (Vol. 3) at 734-735].

The management-related restrictions applicable to section 1.469-5T(a)(7), Temporary Income Tax Regs., supra, reflect Congress' concern that a taxpayer seeking to materially participate in an activity through participation in management will hire expert agents to manage the day-to-day operations of the activity while the taxpayer performs merely a formal management role with

---

[8](...continued)
way suggest that, in determining whether a taxpayer's participation in the operations of an activity is material, it is unreasonable to examine the amount and extent of time spent by the taxpayer in those operations. [Mordkin v. Commissioner, supra; citation omitted.]

limited involvement.[9]  Respondent's contention that the presence of compensated onsite management should preclude petitioner's board activities from consideration under section 1.469-5T(a)(7), Temporary Income Tax Regs., supra, is consistent with this concern.

We find that the activities of compensated onsite management should be considered "management services" for the purposes of section 1.469-5T(a)(7) and (b)(2)(ii)(A), Temporary Income Tax Regs., supra.  Therefore, we find that petitioner has failed to establish material participation under section 1.469-5T(a)(7), Temporary Income Tax Regs., supra.

Section 1.469-5T(a)(4), Temporary Income Tax Regs.

Petitioner argues that her activities constitute material participation under section 1.469-5T(a)(4), Temporary Income Tax Regs., 53 Fed. Reg. 5726 (Feb. 25, 1988), in that she "significantly participated" in the condominium hotel activity and that her aggregate participation in significant participation activities during the year exceeded 500 hours.  In this regard, petitioner combines her activity in the condominium hotel with the activity in her accounting partnership.

---

[9]  As an example of an abuse which Congress sought to address in enacting sec. 469, the Senate report describes a situation whereby outside investors could own syndication rights in a farming activity, operated principally under the direction of a hired agent, which has been structured to assist otherwise passive investors to demonstrate that they play a role in managing the farming operations.  S. Rept. 99-313 at 713, 734 n.20 (1986), 1986-3 C.B. (Vol. 3) 1, 713, 734 n.20.

With respect to petitioner's argument that she qualifies under section 1.469-5T(a)(4), Temporary Income Tax Regs., supra, respondent contends that petitioner failed to raise this argument in a timely fashion. Respondent argues that because no discovery was conducted with respect to petitioner's participation in her accounting partnership, undue prejudice would result were we to consider this issue. Respondent also maintains that, even if the Court considers petitioner's argument, petitioner has failed to adequately substantiate the requisite hours in the condominium hotel activity and in the accounting partnership activity.

It is well settled that we will not consider issues raised by parties when undue surprise and prejudice would result. Seligman v. Commissioner, 84 T.C. 191, 198 (1985), affd. 796 F.2d 116 (5th Cir. 1986). While petitioner's pre-trial memorandum broadly argued that her activities constituted material participation under section 469, petitioner introduced this particular argument during closing arguments. We note, however, that the notice of deficiency characterizes petitioner's condominium rental activities as "passive activities" under section 469. Moreover, respondent's pre-trial memorandum argues that petitioner failed to meet each of the seven tests contained in the regulations, including section 1.469-5T(a)(4), Temporary Income Tax Regs., supra. Petitioner reported her accounting partnership activities on her returns, and respondent was well aware that the only issue in this trial was whether petitioner's activity constituted material participation in the ownership of

her unit at Wisp.  Based on all the circumstances herein, we will consider petitioner's argument under section 1.469-5T(a)(4), Temporary Income Tax Regs., supra.

To establish material participation under section 1.469-5T(a)(4), Temporary Income Tax Regs., supra, petitioner's condominium rental activity must constitute a "significant participation" activity under section 1.469-5T(c), Temporary Income Tax Regs., 53 Fed. Reg. 5726 (Feb. 25, 1988). Furthermore, petitioner must participate in at least one other significant participation activity, with the total participation in all significant participation activities exceeding 500 hours. A significant participation activity is one in which the taxpayer participates for more than 100 hours, but which fails to constitute material participation under one of the other six tests.  Sec. 1.469-5T(c)(1)(ii) and (2), Temporary Income Tax Regs., supra.  Thus, in order for an activity to be considered a significant participation activity, the taxpayer (1) must have more than 100 hours of participation; (2) must have less than 500 hours of participation, as participation in excess of 500 hours would satisfy the test contained at section 1.469-5T(a)(1), Temporary Income Tax Regs., supra; and (3) must not be the individual with the most hours of participation in the activity, as a person with the greatest amount of participation in the activity, if in excess of 100 hours, satisfies the test at section 1.469-5T(a)(3), Temporary Income Tax Regs., supra.

Petitioner argues that her participation in Scheiner & Halpern constitutes a significant participation activity.[10] Petitioner's testimony with regard to the time spent working for Scheiner & Halpern, however, is not corroborated by written documentation. The regulations specify that participation in an activity may be established by any reasonable means. While contemporaneous records are not required, reasonable means may include appointment books, calendars, or narrative summaries. Sec. 1.469-5T(f)(4), Temporary Income Tax Regs., supra.

Given the self-serving nature of petitioner's testimony, coupled with the lack of corroboration in the record, we do not accept her naked assertion that she worked the requisite amount of hours to qualify her accounting partnership activity as a significant participation activity. We are particularly troubled with petitioner's ability to recall, without any records, the number of hours of participation in her accounting partnership which neatly places her over all of the hurdles necessary to satisfy the requirements of section 1.469-5T(a)(4), Temporary Income Tax Regs., supra. The record indicates that in other aspects of her activities, petitioner maintained thorough documentation, as would be expected of someone in her profession.

---

[10] Petitioner testified that she worked 426 hours for Scheiner and Halpern in 1991 and 402 hours in 1992, while her partner worked 469 hours in 1991 and 440 hours in 1992. Were we to accept petitioner's testimony, her activity at Scheiner and Halpern would constitute a significant participation activity which, when added to the time spent at Wisp, might exceed 500 hours.

Yet, with respect to the accounting partnership activity, no documentation of the hours worked was presented to respondent or the Court.

We are not bound to accept the unverified, undocumented testimony of taxpayers. Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976). It is well established that the failure of a party to introduce evidence within his or her possession which, if true, would be favorable, gives rise to the presumption that if produced, it would be unfavorable. Frierdich v. Commissioner, 925 F.2d 180, 185 (7th Cir. 1991), affg. T.C. Memo. 1989-393 (amending T.C. Memo. 1989-103). If the partnership records of Scheiner & Halpern lent support for petitioner's contention, presumably they would have been made a part of the record. Petitioner has not met her burden of proving that she met the requirements of section 1.469-5T(a)(4), Temporary Income Tax Regs., supra. Chapin v. Commissioner, T.C. Memo. 1996-56.

Petitioner has failed to establish material participation with respect to her condominium rental activities under section 469 and the accompanying regulations. Therefore, we sustain respondent's determination that the losses from such activities were passive activity losses under section 469.

To reflect the foregoing,

Decision will be entered
under Rule 155.