T.C. Memo. 2016-196

UNITED STATES TAX COURT

CLIFTON E. STANLEY AND DARLENE H. STANLEY, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 20781-14.                          Filed October 26, 2016.

Gary W. Tidwell, for petitioners.

Sara W. Dalton, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

PUGH, Judge:  In a notice of deficiency dated June 9, 2014, respondent

determined the following deficiencies and accuracy-related penalties with respect

to petitioners' Federal income tax for 2010 and 2011:

[*2]

| Year | Deficiency | Penalty sec. 6662(a) |
|------|-----------|---------------------|
| 2010 | $83,142 | $16,628 |
| 2011 | 190,492 | 38,098 |

After concessions,[1] the issues for consideration are: (1) whether petitioners understated their taxable income by $252,721 and $426,236 for 2010 and 2011, respectively, rather than properly excluding the proceeds as nontaxable loans; (2) whether petitioners are entitled to certain deductions claimed on Schedule C, Profit or Loss From Business, for 2010; and (3) whether petitioners are liable for accuracy-related penalties under section 6662(a) for 2010 and 2011.[2]

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. Petitioners resided in Texas when they filed their petition.

During the years in issue Mr. Stanley owned and operated Stanley & Associates, a sole proprietorship engaged in the insurance business. Mr. Stanley

---

[1] Petitioners now concede that they were not entitled to net operating loss carryforwards for 2010 and 2011. Respondent concedes that petitioners received nontaxable loan proceeds of $30,000 and $100,000 for 2010 and 2011, respectively.

[2] Unless otherwise indicated, all section references are the Internal Revenue Code of 1986, as amended and in effect for the years in issue. Rule references are to the Tax Court Rules of Practice and Procedure. All dollar amounts are rounded to the nearest dollar.

[*3] worked for Stanley & Associates as an insurance agent selling annuities and providing retirement advice to clients. He also invested in real estate.

In 2010 and 2011 Mr. Stanley received what petitioners claim to be loan proceeds from clients and friends, and he made periodic payments to some of those clients and friends (and in some cases returned the amounts provided). Respondent argues that the amounts are income (identified through a bank deposits analysis by respondent). We will use the terms "loan", "interest", and "loan repayment" when discussing these amounts and "lender" when discussing the clients and friends.

Mr. Stanley believed that lenders made funds available to him because he offered an attractive return on their investment. During the years in issue Mr. Stanley was trying to grow his insurance business. He had a general idea that he would repay lenders from his real estate investment income and his insurance business. Generally, Mr. Stanley used the loan proceeds: (1) to expand Stanley & Associates; (2) to invest in real estate; (3) to cover some personal and business expenses; and (4) occasionally to repay loans that became due. He did not link any particular loan proceeds with any particular activities.

Mr. Stanley issued promissory notes to lenders for 22 loans during the years in issue. The promissory notes totaled $302,000 and $399,000 for 2010 and 2011,

[*4] respectively. These amounts include the loans that respondent conceded of $30,000 and $80,000 for 2010 and 2011, respectively. (Respondent also conceded that Mr. Stanley received two nontaxable loans totaling $20,000 for 2011, which do not correspond to any of the promissory notes in the record.)

The promissory notes included the following: (1) the amount and date of the loan; (2) the lender's name and address; (3) the interest rate; (4) the length of the loan period; (5) the due date of interest payments and unpaid principal; (6) the signatures of the parties;[3] and (7) a covenant that the "promissor agrees to remain fully bound until the note shall be paid in full." All but one of the promissory notes were unsecured. Repayment periods ranged from 6 to 24 months, and interest rates ranged from 7% to 25% (with the exception of one short-term loan of two weeks with an interest rate of 1%). Mr. Stanley also created a loan file for the promissory notes corresponding to each lender.

Mr. Stanley made interest payments on the loans. Some of the interest payments were made in accordance with the terms of the corresponding promissory note while other interest payments were untimely. Mr. Stanley

---

[3] All but two of the notes bore Mr. Stanley's signatures and the signatures of the lenders. The two notes without the lenders' signatures were conceded to be loans by respondent.

[*5] recorded the amounts of interest paid on some of the corresponding promissory notes. For other payments the only record was the check itself.

When the loans became due, some were paid in full while others were renewed. With respect to the loans that were renewed, the repayment period of each loan was extended and interest continued to accrue. Mr. Stanley indicated in writing on most (but not all) of the promissory notes whether the loans were paid in full or were renewed. In some cases loans were renewed without any documentation of the renewal; the only indication of renewal was that Mr. Stanley paid interest or in some cases made a partial loan repayment. In 2015, after the petition in this case was filed, Mr. Stanley reported interest paid to various lenders for 2010 and 2011 on Forms 1099-MISC, Miscellaneous Income, and reported to the Internal Revenue Service total interest paid to those lenders on Forms 1096, Annual Summary and Transmittal of U.S. Information Returns. He reported interest of $14,550 for 2010 and $35,650 for 2011 (totaling $50,200) paid by "Clifton E. Stanley DBA The Lifepay Group". Mr. Stanley calculated the interest he reported as paid by reviewing and totaling amounts on his check stubs for each year.

Petitioners' 2010 and 2011 Federal income tax returns were prepared by a paid income tax return preparer. The disputed loan proceeds that petitioners

**[*6]** received in 2010 and 2011 were not included in income on their returns.

Petitioners' 2010 Federal income tax return included a Schedule C for Stanley &

Associates on which petitioners claimed, as relevant, deductions for car and truck

expenses of $15,360, "Home Owners Association dues" (HOA dues) of $14,918,

and "Interest on loans" of $39,075.

In the notice of deficiency respondent: (1) increased petitioners' taxable

income by $282,721 and $526,236 for 2010 and 2011, respectively;[4] (2)

disallowed deductions for $57,499 of Schedule C business expenses (including

$8,529 of car and truck expenses, $9,895 of HOA dues, and the entire amount

deducted as "Interest on loans") for 2010; and (3) determined accuracy-related

penalties on various grounds, including "negligence or disregard of rules or

regulations" and a "substantial understatement of income tax" for 2010 and 2011.

Petitioners timely petitioned the Court for redetermination.

OPINION

I. Burden of Proof

Generally, the burden of proof in cases before the Court is on the taxpayer,

subject to certain exceptions. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115

---

[4] Respondent's concessions discussed above (of $30,000 and $100,000) reduce the income remaining in dispute to $252,721 and $426,236, respectively.

**[*7]** (1933).[5] Under section 7491(a), in certain circumstances, the burden may shift to the Commissioner. Petitioners do not argue that the burden should shift; nor did they offer sufficient information in the record to permit us to conclude that the burden should shift under section 7491(a). Accordingly, the burden remains on petitioners.

## II. Loan Proceeds

The first and by far the largest issue is whether the amounts Mr. Stanley received were nontaxable loan proceeds. Section 61 defines gross income as "all income from whatever source derived". It is well settled that loan proceeds are not included in gross income because of the obligation to repay the loan. Commissioner v. Tufts, 461 U.S. 300, 307 (1983). Whether a particular transaction constitutes a loan is a question of fact to be determined by considering all of the pertinent facts in the case. Fisher v. Commissioner, 54 T.C. 905, 909 (1970).

---

[5] In unreported income cases, the Commissioner generally must make some minimal evidentiary showing to link the taxpayer with the disputed income for the presumption of correctness to attach. Weimerskirch v. Commissioner, 596 F.2d 358, 360 (9th Cir. 1979), rev'g 67 T.C. 672 (1977); Petzoldt v. Commissioner, 92 T.C. 661, 689 (1989). Here, petitioners do not dispute their link to the amounts in issue. Rather, they argue that the amounts in issue are loan proceeds and not income. Therefore, the presumption remains.

**[*8]**   A bona fide loan requires both parties to have an actual, good-faith intent to establish a debtor-creditor relationship when the funds are advanced.  Id. at 909-910.  An intent to establish a debtor-creditor relationship exists if the debtor intends to repay the loan, and the creditor intends to enforce the repayment.  Beaver v. Commissioner, 55 T.C. 85, 91 (1970); Fisher v. Commissioner, 54 T.C. at 909-910; see also Moore v. United States, 412 F.2d 974, 978 (5th Cir. 1969).

Courts consider various factors in determining whether the parties intended a bona fide loan, such as:  (1) the ability of the borrower to repay; (2) the existence or nonexistence of a debt instrument; (3) security, interest, a fixed repayment date, and a repayment schedule; (4) how the parties' records and conduct reflect the transaction; (5) whether the borrower had made repayments; (6) whether the lender had demanded repayment; (7) the likelihood that the loan was disguised compensation for services; and (8) the testimony of the purported borrower and lender.  Welch v. Commissioner, 204 F.3d 1228, 1230 (9th Cir. 2000), aff'g T.C. Memo. 1998-121; Frierdich v. Commissioner, 925 F.2d 180, 182 (7th Cir. 1991), aff'g T.C. Memo. 1989-393; see also Todd v. Commissioner, T.C. Memo. 2011-123, aff'd, 486 F. App'x 423 (5th Cir. 2012).  The factors are "non-exclusive" and provide a "general basis upon which courts may analyze a transaction".  Welch v. Commissioner, 204 F.3d at 1230.

**[*9]** Courts assess the borrower's ability to repay by evaluating whether there was a reasonable expectation of repayment in the light of the economic realities of the situation. See, e.g., Fisher v. Commissioner, 54 T.C. at 910. An expectation at the time the funds were advanced that the borrower would be unable to repay suggests that the parties did not intend a bona fide loan. See, e.g., Commissioner v. Makransky, 321 F.2d 598, 600 (3d Cir. 1963), aff'g 36 T.C. 446 (1961). Security, interest, a fixed repayment date, and a repayment schedule suggest that the parties intended a bona fide loan. See, e.g., Welch v. Commissioner, 204 F.3d at 1230-1231; Frierdich v. Commissioner, 925 F.2d at 183-184. A lack of security, a low interest rate, and an open-ended repayment period suggest otherwise. See, e.g., Frierdich v. Commissioner, 925 F.2d at 183-184.

Mr. Stanley credibly testified that the lenders provided him funds because he offered an attractive return on their investment and that he intended to repay the outstanding loans in full and intended to pay any interest that had accumulated. While Mr. Stanley did not have a specific plan for repayment, he intended to use the proceeds from his insurance business and his real estate investments. See Kaider v. Commissioner, T.C. Memo. 2011-174, 2011 WL 2976203, at *6 (holding that there was a reasonable expectation of repayment even though the taxpayer had no reliable source of future earnings and had other outstanding debt

**[\*10]** because both the taxpayer and the lender expected the taxpayer to repay the loan from future proceeds of startup enterprises). Although Mr. Stanley did not offer testimony of any lenders, we found his testimony credible, as noted above, and respondent offered no evidence to contradict his testimony save the fact that certain loans had been renewed.

Mr. Stanley's records, although not complete, generally support loan characterization. The record contains 22 promissory notes between Mr. Stanley and the lenders for 2010 and 2011.[6] The promissory notes included: (1) the amount and date of the loan; (2) the lender's name and address; (3) the interest rate; (4) the length of the loan period; (5) the due date of interest payments and the unpaid principal; and (6) the signatures of the parties. The promissory notes included repayment periods ranging from 6 to 24 months and interest rates ranging from 7% to 25% (with the exception of one short-term loan of two weeks with an interest rate of 1%). All but one of the promissory notes were unsecured.

Mr. Stanley's actions on balance support loan characterization as well. He paid the interest for the corresponding promissory notes although he was not always timely. He made repayments on some of the loans while other loans were

---

[6] As noted, respondent conceded that the proceeds of two loans without promissory notes in the record were nontaxable loans to Mr. Stanley.

[*11] renewed. He indicated the loan status on some of the corresponding promissory notes (whether paid off or renewed and the amount of interest paid). The record is insufficient, however, to allow us to find that any lenders demanded repayment and if so whether the demand was honored.

After carefully reviewing the record and considering the factors, we find that $252,721 and $319,000 in excess of respondent's concessions for 2010 and 2011, respectively, were proceeds from bona fide loans and properly excluded from petitioners' 2010 and 2011 income. This leaves $107,236 of the original unreported income of $526,236 for 2011 in dispute. Although petitioners bear the burden of proof, they offered none as to this remaining amount that would allow us to conclude it was nontaxable. Indeed, we found no explanation in the record for any amounts beyond $297,000 and $419,996[7] for 2010 and 2011 respectively. Without any promissory notes or other explanation for the remaining $107,236, we cannot conclude that this amount consisted of nontaxable loan proceeds. We therefore find that this amount is includible in petitioners' 2011 taxable income.

---

[7] This amount includes both the $319,000 we find to be proceeds from bona fide loans and the $100,000 respondent conceded, leaving $107,236 of the original $526,236 of unreported income for 2011 unaccounted for, as noted above.

**[*12]** III.  Schedule C Deductions

Deductions are a matter of legislative grace, and the taxpayer must prove his entitlement to any deductions.  Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).  A taxpayer claiming a deduction on a Federal income tax return must demonstrate that the deduction is allowable pursuant to some statutory provision and must substantiate that the expense to which the deduction relates has been paid or incurred.  Sec. 6001; Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), aff'd per curiam, 540 F.2d 821 (5th Cir. 1976); Meneguzzo v. Commissioner, 43 T.C. 824, 831-832 (1965); sec. 1.6001-1(a), Income Tax Regs.

As a general rule, if a taxpayer provides sufficient evidence that the taxpayer has incurred a trade or business expense contemplated by section 162(a), but is unable adequately to substantiate the amount of the expense, then the Court may estimate the amount of such expense and allow a deduction to that extent. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930).  For the Court to estimate the amount of an expense, there must be some basis upon which an estimate may be made.  Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). Otherwise, any deduction allowed would amount to "unguided largesse". Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957).

**[\*13]**  Deductions for expenses attributable to travel, entertainment, gifts, and the use of "listed property" (including passenger automobiles), if otherwise allowable, are subject to stricter rules of substantiation.  See sec. 274(d); Sanford v. Commissioner, 50 T.C. 823, 827-828 (1968), aff'd per curiam, 412 F.2d 201 (2d Cir. 1969); sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).

A.  Car and Truck Expenses and HOA Dues

Of the deductions for car and truck expenses of $15,360 and HOA dues of $14,918 claimed on the Schedule C for 2010, respondent disallowed deductions for car and truck expenses of $8,529 and for HOA dues of $9,895 for failure to substantiate.  Petitioners offered no testimony or other evidence to substantiate deductions of the disallowed amounts.  We therefore sustain respondent's determination.

B.  Interest on Loans

Section 163 generally allows a deduction for any interest paid or accrued on indebtedness in the taxable year.  Section 163(h)(1) provides an exception to this general rule of deductibility for "personal interest".  Section 163(h)(2) defines personal interest to mean "any interest allowable as a deduction" other than, as relevant here, interest paid or accrued on indebtedness properly allocable to a trade

[*14] or business, or investment interest (as defined in section 163(d)), or "qualified residence interest" (as defined in section 163(h)(3)).

Mr. Stanley acknowledged that petitioners used some of the loan proceeds to pay personal expenses, and petitioners made no attempt to distinguish between those loan proceeds used for personal expenses and those used for other purposes that might permit deduction. We likewise have insufficient evidence to make any reasonable allocation between payment of personal expenses and other uses. See Sec. 1.163-8T(a)(3), Temporary Income Tax Regs., 52 Fed. Reg. 24999 (July 2, 1987) (interest expenses on a debt are allocated in the same manner as the related debt is allocated; debt is allocated by tracing the proceeds to specific expenditures). As we have no basis to allocate, we need not consider whether some uses of the loan proceeds would give rise to deductible interest. Accordingly, we hold that petitioners are not entitled to the deduction of $39,075 in interest expenses claimed on their 2010 return.

IV. Section 6662(a) Accuracy-Related Penalty

Section 6662(a) and (b)(1) and (2) imposes an accuracy-related penalty of 20% of the portion of an underpayment of income tax that is attributable to the taxpayer's negligence or other specified grounds. "Negligence" includes any failure to make a reasonable attempt to comply with the provisions of the Internal

**[\*15]** Revenue Code, including any failure to keep adequate books and records or to substantiate items properly. Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs. We have defined negligence as the failure to exercise due care or the failure to do what a reasonable person would do under the circumstances. See Allen v. Commissioner, 92 T.C. 1, 12 (1989), aff'd, 925 F.2d 348, 353 (9th Cir. 1991); Neely v. Commissioner, 85 T.C. 934, 947 (1985). The burden of production for the section 6662(a) accuracy-related penalty rests with the Commissioner. See sec. 7491(c).

Respondent determined that petitioners failed to keep adequate records substantiating expenses for the Schedule C deductions claimed on their 2010 return and disallowed in the notice of deficiency, and petitioners offered no evidence to refute that determination. Petitioners offered no records, such as promissory notes, or explanation for the $107,236 that respondent determined to be unreported income in excess of the amounts we determined above to be nontaxable loan proceeds for 2011. See sec. 7491(c); see also Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001). Further, the record is silent as to petitioners' concession for the net operating loss carryforward for 2010 and 2011. See Perry Funeral Home, Inc. v. Commissioner, T.C. Memo. 2003-340 (finding that the Commissioner met his burden of production under section 7491(c) with

[*16] respect to items the taxpayer conceded when the record was silent as to the taxpayer's position on those items, and there was no evidence that the taxpayer's errors were other than negligent).

Alternatively, to the extent that the Rule 155 computations show that the understatement of income tax for 2010 or 2011 exceeds the greater of 10% of the tax required to be shown on the return or $5,000, see sec. 6662(d)(1)(A), respondent has met his burden of producing evidence showing that a section 6662(a) penalty for an underpayment of tax attributable to a substantial understatement of income tax is appropriate.

The accuracy-related penalty does not apply to any part of an underpayment of tax if it is shown that the taxpayer acted with reasonable cause and in good faith with respect to that portion. Sec. 6664(c)(1). The determination of whether a taxpayer acted in good faith is made on a case-by-case basis, taking into account all the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. Petitioners bear the burden of proving that they had reasonable cause and acted in good faith with respect to the underpayment. See Higbee v. Commissioner, 116 T.C. at 449.

Petitioners, who are represented by counsel, do not contend, let alone demonstrate, that they had reasonable cause and acted in good faith with respect to

**[\*17]** that portion of the underpayment of tax that remains for each year.

Therefore, the portion of the penalty relating to the remaining underpayment of tax

for each year will be sustained.

Any contentions we have not addressed are irrelevant, moot, or meritless.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.